United States Court of Appeals,

Fifth Circuit.

No. 91–1820.

In the Matter of CORLAND CORPORATION, Debtor.

JAMES L. STEPHENSON, and UNITED BANK, N.A., Appellants Cross–Appellees,

v.

DUKE SALISBURY, Appellee Cross–Appellant.

Aug. 12, 1992.

Appeals from the United States District Court For the Northern District of Texas.

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants appeal the district court's judgment allowing the bankruptcy trustee to avoid a postpetition transfer of property of the estate and denying appellant Stephenson a setoff. Because we conclude that the transfer was a third-party payment on a guaranty and did not involve property of the estate, we reverse on both issues and remand for further proceedings. The Trustee cross-appeals the admission of certain evidence and the denial of leave to amend his complaint; we find no error and affirm the judgment on both these issues.

I.

In 1980 the First National Bank of Lancaster loaned Clint Murchison, Jr. and Empire Leasing Co., one of his companies, $375,000 in return for a promissory note. Empire, in turn, loaned $275,000 of that $375,000 to a company controlled by appellant James L. Stephenson, Jr., in return for a note. Both notes were renewed several times. By the time Murchison renewed the note to the Bank on October 22, 1984, the First National Bank of Lancaster had become appellant United Bank, N.A. (the Bank), the obligor had changed from Empire to another Murchison company, Corland Corporation, and the principal amount of the note had been reduced to $250,000. Thus the October 22, 1984 note evidenced a debt of $250,000 owed by Corland to United Bank; we will refer to this

renewal as the Corland Note. Stephenson personally guaranteed the Corland Note. That same day, Stephenson gave Corland his own note for $250,000, with the identical interest rate and payment terms through maturity as the Corland Note; we will refer to this renewal as the Stephenson Note. Stephenson, therefore, was directly liable to Corland on the Stephenson Note and secondarily liable to the Bank as the guarantor of the Corland Note. No one has adequately explained why the transaction was structured in this manner.

The parties intended payments to Corland on the Stephenson Note to cover payments Corland owed the Bank under the Corland Note. This intent can be inferred from the fact that the two notes have identical payment terms, and from the explicit "credit language" of the Stephenson Note to Corland, which provides that

> all payments on this note shall be applied by Corland to its note of like amount and date payable to United Bank, N.A. James L. Stephenson, Jr. shall have the right to make payment direct to United Bank, N.A. on that Corland Note and receive credit on this [Stephenson] [N]ote.

At first, the parties' actions comported with this intent. On January 22, 1985, Stephenson took a check for $14,410.41 to TXSO, Inc., a Murchison entity, as his periodic payment due under the Stephenson Note. TXSO, in turn, then issued a check for $14,410.41 and took it to the Bank as a periodic payment due under the Corland Note.

But this procedure changed in April 1985 when Corland filed for bankruptcy. After this event, Stephenson began making periodic principal and interest payments directly to the Bank. The Bank then credited those payments against the amount it was owed under the Corland Note. These periodic payments totaled $94,831.30 between April 1985 and April 1987. Although no evidence was presented that the Bank made any demand on Stephenson to make the periodic payments, there is evidence that the Bank demanded that Stephenson make the balloon payment due under the Corland Note on April 22, 1987. Stephenson complied, and on April 22, 1987, paid the Bank

$220,636.33, thereby extinguishing the Corland Note.[1]

Duke Salisbury, estate trustee, by and through D.M. Lynn, plan trustee of Corland (Trustee), sued Stephenson and the Bank under § 549 of the Bankruptcy Code to avoid Stephenson's payments to the Bank.[2] The Trustee contends that the payments were made pursuant to the Stephenson Note and thus constituted postpetition transfers of property of the estate. Stephenson and the Bank (together, "the defendants") maintain that the payments were made pursuant to Stephenson's guaranty on the Corland Note, not as payments on the Stephenson Note. Stephenson also sought to set off his payments to the bank against the debt he owed to Corland under the Stephenson Note.

After a trial, the bankruptcy court concluded that the Trustee could avoid the payments and that Stephenson was not entitled to setoff. The court awarded judgment as follows:

1. Against Stephenson and Bank, jointly and severally, for $315,477.63 (the balloon payment plus the periodic payments);

2. Against the Bank for $54,955.62 in interest;

3. Against Stephenson for $110,122,37 ($425,600 principal and interest due under the Stephenson Note less the amount payable under # 1 above); and

4. Against Stephenson for $42,560 in attorney's fees (based on 10% of Stephenson Note).

The district court affirmed, primarily on the basis of the bankruptcy court's opinion. Stephenson and the Bank timely appealed, and the Trustee timely cross-appealed.

II.

We review the bankruptcy and district courts' findings of fact for clear error, but their legal

---

[1]Stephenson obtained the funds to make the balloon payment through a new loan from the Bank.

[2]The Trustee previously had sought to enjoin Stephenson from making, and the Bank from accepting, the balloon payment of $220,636.33. The bankruptcy court denied this petition as moot after the balloon payment was actually made.

conclusions de novo.  *Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1252 (5th Cir.1986).

A.

We first address whether Stephenson paid the Bank pursuant to his guaranty of the Corland Note, or pursuant to his obligation to Corland under the Stephenson Note.  The bankruptcy and district courts concluded that the payments were made as constructive payments on the Stephenson Note.  Critically, however, neither court addressed the effect, if any, of the guaranty.

Initially we must determine whether a valid guaranty existed.  The record contains three documents dated October 22, 1984:  the Corland Note between Corland and United Bank;  Stephenson's guaranty of the Corland Note;  and Stephenson's note to Corland.  The guaranty is proper on its face.  At trial, counsel for the Trustee read Stephenson's deposition into the record;  in that deposition, Stephenson stated that he guaranteed the October 22, 1984 Corland Note.  In addition, defense counsel offered the guaranty into evidence after Charles Floyd, the Bank's chairman and chief executive officer, identified the document;  the bankruptcy court admitted the document without objection.  And in its April 1988 denial of the defendants' motion for summary judgment, the bankruptcy court stated that Stephenson guaranteed the October 22, 1984 Corland Note.  At oral argument to us,[3] counsel for the Trustee suggested that the guaranty may have been backdated;  she also conceded, however, that she had no proof of this fact.  We conclude that a valid guaranty existed on October 22, 1984 whereby Stephenson guaranteed payment on Corland's promissory note to the Bank.

We now turn to the question of whether Stephenson's payments to the Bank were made pursuant to his guaranty of the Corland Note, or whether they were constructive payments on the Stephenson Note.  In its Findings of Fact and Conclusions of Law, the bankruptcy court did not mention the guaranty at all.  The general rule, however, "is that upon default of the maker of a note

_____

[3]This argument was not stated clearly, if at all, in the Trustee's briefs.

in the payment thereof a guarantor of it becomes liable to the holder and the relationship of debtor and creditor is at once established between the guarantor and the holder of the note." *United States v. Select Meat Co.,* 275 F.Supp. 38, 45 (W.D.Tex.1967). Corland owed the Bank quarterly payments on the Corland Note. When Corland filed for bankruptcy in April 1985, it defaulted on its payments to the Bank. Stephenson then stepped in to make the payments to the Bank. It is of no consequence that the Bank did not demand payment from Stephenson pursuant to the guaranty. The terms of the guaranty expressly waived demand on Stephenson.[4] This is consistent with Texas law, which provides that if an instrument is not paid when due, a guarantor must "pay it according to its tenor without resort by the holder to any other party"; "presentment, notice of dishonor and protest are not necessary to charge the user." V.T.C.A., Bus. & C. §§ 3.416(a) and (e). The commentary to this provision explains that "the liability of the indorser becomes indistinguishable from that of a co-maker." *Id.* comment. Once Corland defaulted on its note to the Bank, Stephenson, as guarantor, became liable on the note according to its terms. *Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d 874, 877 (Tex.1976); *Hopkins v. First Nat'l Bank at Brownsville,* 551 S.W.2d 343, 345 (Tex.1977).

The Trustee offers three reasons why we should deem the payments to the Bank as constructive payments on the Stephenson Note rather than as payments pursuant to the guaranty of the Corland Note. The Trustee argues first that the defendants admitted that Stephenson made the payments as constructive payments on the Stephenson Note. During discovery, the Trustee asked the defendants to admit the following:

---

[4]The guaranty provides in part:

> Guarantors expressly waive diligence on the part of the said Creditor in the collection of any and all said indebtedness, protest, notice and all extensions that may be granted to the Debtor, and said Creditor shall be under no obligation to notify us, or either of us, of its acceptance hereof, nor of any advances made or credit extended on the faith hereof, nor of the failure of said Debtor to pay said indebtedness as it matures.

> Admit or deny that Stephenson, since January of 1985, has made payments on the Stephenson Note to United Bank, N.A., making the final payment in April of 1987.

Trustee's Request for Admission No. 9. Both defendants admitted this statement. The Trustee contends that this admission conclusively establishes that the payments were constructive payments on the Stephenson Note. The Trustee even goes so far as to cross-appeal the bankruptcy court's admission of any evidence that contradicted this admission.[5]

We note initially that the bankruptcy court did not mention Request No. 9 as a basis for concluding that Stephenson made constructive payments on the note owed to Corland. Further, the defendants respond, correctly, that only "deliberate, clear and unequivocal" statements can constitute conclusive judicial admissions. See *Backar v. Western States Producing Co.,* 547 F.2d 876, 880 n. 4 (5th Cir.1977). The defendants point to their denial of Request No. 11, which asked:

> Admit or deny that the payments made by Stephenson to United Bank, N.A., since January of 1985, reflected as payments of the Corland Note, were pursuant to the obligation of Stephenson to Corland under the Stephenson Note.

In their response to Request No. 11, then, the defendants directly denied the proposition for which the Trustee interprets their response to Request No. 9 as admitting. When combined with the other evidence adduced at trial concerning the validity of the guaranty, the admission to Request No. 9 is not conclusive on the question of whether the payments were made pursuant to the guaranty. It follows that Stephenson's answer to Request No. 9 does *not* constitute a judicial admission. We therefore reject the Trustee's argument.

As to the Trustee's contention that the bankruptcy court erred by admitting into evidence all of defendants' answers to the Trustee's Requests for Admission, including Request No. 11, we conclude that the court did not abuse its discretion in doing so. See *Cranberg v. Consumers Union*

---

[5] Fed.R.Civ.P. 36(b) provides, in part, that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."

*of U.S., Inc.,* 756 F.2d 382, 392 (5th Cir.1985) (great latitude is allowed in the conduct of a bench trial). The Trustee's first cross appeal is therefore without merit.

The Trustee argues next that the defendants have waived any argument concerning the guaranty by not pleading it. The Trustee filed its First Amended Complaint against both defendants in April 1987. Neither defendant raised the guaranty in its answer or motion to dismiss in May 1987. Defendants, however, did raise the issue of the guaranty in their motion for summary judgment in July 1987, to which the Trustee fully responded. The trial in this case did not begin until October 1989, over two years later. Thus defendants' failure to raise the guaranty in their initial pleadings did not cause unfair surprise or impair the Trustee's ability to respond, and we will not consider defendants to have waived the argument. *Lucas v. United States,* 807 F.2d 414, 417–18 (5th Cir.1986); *Bull's Corner Restaurant, Inc. v. Director of the Fed. Emergency Mgt. Agcy.,* 759 F.2d 500, 502 (5th Cir.1985).

Finally, the Trustee suggests that giving force to the guaranty would render the credit language of the Stephenson Note redundant. The credit language gave Stephenson the right to make payments on the Corland Note (Corland's debt to the Bank) directly to the Bank and to receive a corresponding credit by Corland on the debt owed it by Stephenson. The parties hotly dispute the validity and effect of this credit language. We need not reach this issue, however. It is enough to note that enforcing the guaranty in no way renders the credit language redundant. Guaranties exist for the creditor's benefit. The Bank gains an additional obligor by virtue of the guaranty, but gains nothing from the credit language of the Stephenson Note. It is true that the credit language appears merely to restate the right of subrogation a guarantor has against the maker of a note when the guarantor pays pursuant to a guaranty, but that is not the same as saying that the guaranty serves no further purpose. The Trustee's argument concerning this possible redundancy is best directed at the validity of the credit language, not at the validity of the guaranty.

In short, Stephenson faced two debts that were due and owing simultaneously: his obligation to Corland under the Stephenson Note, and his obligation to the Bank pursuant to his guaranty of the Corland Note. No one has suggested a reason why Stephenson did not have the option of choosing which debt to pay. Stephenson says that he paid pursuant to the guaranty. This is certainly a plausible assertion. After all, he had a direct obligation to the Bank on the guaranty. Moreover, it would have been irrational for Stephenson to have chosen to pay the Stephenson Note instead of the guaranty because he would have exposed himself to the potential of additional liability.[6] In other words, Stephenson had nothing to gain, but possibly something to lose, by paying the Stephenson Note rather than his guaranty of the Corland Note. Under the circumstances we see no reason to reject Stephenson's contention that he paid the Bank under the guaranty.

We conclude, therefore, that the bankruptcy and district courts erred in characterizing Stephenson's payments to the Bank as constructive payments on the Stephenson Note owed to Corland; rather, the payments were pursuant to Stephenson's guaranty of the Corland Note owed to the Bank. We also find that the Trustee's first cross appeal concerning the admission of certain evidence to be without merit. Our disposition of these issues renders unnecessary any analysis of Stephenson's alternative suggestion that the payments fall within the "earmarking" doctrine of *Coral Petroleum v. Banque Paribas–London,* 797 F.2d 1351 (5th Cir.1986), or the Bank's suggestion that the bankruptcy court erred by admitting and relying on irrelevant "bad-guy" evidence.

## B.

Next, we address the consequences that follow from our conclusion that the payments to the Bank were pursuant to Stephenson's guaranty of the Corland Note. The first consequence is that the

---

[6]The following hypothetical helps illustrate. Suppose Stephenson pays the Corland estate $250,000 in full payment (excluding interest) of the Stephenson Note. The Bank, in turn, has a $250,000 claim against the estate on the Corland Note. If the Trustee ends up paying the estate's unsecured creditors only 50% on their claims, the Bank will receive only $125,000 from the estate. The Bank then sues Stephenson on the guaranty to collect the other $125,000. The result: Stephenson has paid a total of $375,000.

Trustee may not use § 549 to avoid the transfers.

Section 549 of the Bankruptcy Code permits a trustee to avoid any postpetition transfer of "property of the estate." 11 U.S.C. § 549(a)(1). It is undisputed that Stephenson made direct payments to the Bank only after Corland filed for bankruptcy. Thus the Trustee may avoid those transfers as long as the funds constitute property of the Corland estate. Payments on a guaranty, however, are not "property of the estate" because the funds come from the guarantor, not the debtor. Lawrence P. King, 4 *Collier on Bankruptcy* ¶ 547.03[2] at 547–25 (Matthew Bender, 15th ed. 1992) (*Collier* ) (analyzing similar requirement under § 547); *In re Flooring Concepts, Inc.,* 37 B.R. 957, 961, 963 (Bankr. 9th Cir.1984) ("Payments made by a contract debtor of a bankrupt to a creditor of the bankrupt do not become part of the bankruptcy estate where there is an independent obligation on the part of the debtor to pay the creditor."); *Brown v. First Nat'l Bank of Little Rock,* 748 F.2d 490, 491 (8th Cir.1984); *In re Page,* 18 B.R. 713, 715, 716 (D.D.C.1982); *In re Steelvest, Inc.,* 112 B.R. 852, 855 (Bankr.W.D.Ky.1990).

The Trustee spends considerable time arguing that Stephenson did not make the payments pursuant to the guaranty and the consequences that follow from that conclusion, but never argues in the alternative the consequences that follow from a conclusion that the payments were, in fact, pursuant to the guaranty. To hold, as the Trustee suggests, that payments by guarantors are avoidable would be to render guaranties worthless in bankruptcies. Lenders obtain guaranties for protection against just this type of scenario. We therefore reverse the district court's judgment permitting the Trustee to recover under §§ 549 and 550(a) from either Stephenson or the Bank the amounts that Stephenson paid to the Bank. We also reverse the judgment against the Bank for $54,955.62 in interest. We turn next to the Trustee's direct claim against Stephenson for payment of the Stephenson Note.

C.

Stephenson contends that the bankruptcy and district courts erred by not allowing him to set off the payments he made to the Bank against the debt he owed directly to Corland.

Section 553(a) permits creditors to set off mutual, prepetition claims and debts with the debtor if such setoff would be recognized under nonbankruptcy law.[7]  Initially we consider the bankruptcy court's conclusion that Stephenson is precluded from asserting a right of setoff by the automatic stay of § 362.  We agree that setoff is explicitly encompassed by the automatic stay.  See 11 U.S.C. § 362(a)(7).  The automatic stay, however, "does not defeat the right of setoff;  rather, setoff is merely stayed pending an "orderly examination of the debtor's and creditor's rights.' "  4 *Collier* ¶ 553.05[2] at 553–35 (citation omitted).

Stephenson concedes that he never petitioned for relief from the automatic stay to assert his

---

[7]Section 553(a), entitled "Setoff," provides:

> (a) ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case except to the extent that—
>
> ....
>
> (2) such claim was transferred, by an entity other than the debtor, to such creditor—
>
> (A) after the commencement of the case;  or
>
> (B)(i) after 90 days before the date of the filing of the petition;  and
>
> (ii) while the debtor was insolvent;  or
>
> (3) the debt owed to the debtor by such creditor was incurred by such creditor—
>
> (A) after 90 days before the date of the filing of the petition;
>
> (B) while the debtor was insolvent;  and
>
> (C) for the purpose of obtaining a right of setoff against the debtor.

11 U.S.C. § 553(a).

right to setoff. This omission, however, is not fatal. The Trustee has sued Stephenson in a turnover proceeding under § 542(b) to collect on the Stephenson Note. Section 542(b) expressly excepts funds that can be setoff pursuant to § 553. 11 U.S.C. § 542(b)[8]; *Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030, 1037 (5th Cir.1987). Thus the "right to setoff also may be interposed initially as a defense in a turnover proceeding" under § 542(b). 4 *Collier* ¶ 553.05[2] at 535–37. Although Stephenson did not plead setoff in his original answer or in his motion for summary judgment, he did file, at the bankruptcy court's invitation, a brief supporting setoff as early as November 1987, to which the Trustee responded. Further, the joint pre-trial order lists setoff in the summary of claims and defenses. We conclude that Stephenson properly asserted setoff in response to the Trustee's demand on the Stephenson Note, without violating the automatic stay. We therefore turn to the merits of the setoff question.

It is clear that, in Texas, a guarantor who has paid a maker's creditor pursuant to a guaranty may offset those payments against a debt the guarantor otherwise owes to the maker. *Highlands Cable Television, Inc. v. Wong,* 547 S.W.2d 324, 327 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.) (citing *Fox v. Kroeger,* 119 Tex. 511, 35 S.W.2d 679 (1931)) (guarantor who pays on guaranty obtains direct claim against maker); *CPS Int'l, Inc. v. Harris & Westmoreland,* 784 S.W.2d 538, 544 (Tex.App.—Texarkana 1990) ("object of a setoff is to adjust the indebtedness between the parties and allow recovery of only the balance that is due"). The question here, then, is whether Stephenson satisfies the requirements for a setoff under § 553.

The only requirements for setoff are that the debts and claims be mutual and prepetition; the

---

[8]Section 542(b) provides:

> (b) ... an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, *except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.*

11 U.S.C. § 542(b) (emphasis added).

"debts and claims do not have to be of the same character before setoff may be applied." *Braniff,* 814 F.2d at 1035. We address mutuality first. Stephenson owes a debt to the debtor (Corland) under the Stephenson Note. The debtor (Corland), in turn, owed the Bank a debt under the Corland Note. Stephenson paid the debtor's debt to the Bank pursuant to his guaranty of the Corland Note. Section 509(a) provides that guarantors become subrogated to the rights of the creditors they pay to the extent of their payments.[9] "Where an entity acting as a surety or guarantor for the debtor has a claim against the debtor for reimbursement, based on such entity's payment to another creditor of the debtor, the claim may be set off against a debt owed by such entity to the debtor. Mutuality is evident because the surety's claim for reimbursement and the debtor's debt are owing between the same parties." 4 *Collier* ¶ 553.04[5] at 553–32 (footnotes omitted). Thus mutuality of parties exists here.

Next we must determine whether both mutual debts owing between Stephenson and the debtor arose prepetition. It is undisputed that Stephenson's debt to Corland under the Stephenson Note arose prepetition. The question, then, is whether Corland's debt to Stephenson "arose before the commencement of the case." 11 U.S.C. § 553(a). Stephenson paid the Bank directly only after Corland declared bankruptcy. The bankruptcy court concluded that Stephenson's payments to the Bank constituted postpetition transfers under §§ 549 and 553(a)(2). The bankruptcy court's conclusion stemmed from its belief that Stephenson made constructive payments on the Stephenson Note. Our conclusion that Stephenson paid the Bank pursuant to his guaranty of the Corland Note changes the analysis. We must consider the impact of subrogation. The Bank would have had a prepetition claim against the estate under the Corland Note. Stephenson, as guarantor, paid the Bank the amount owed and is now subrogated to the Bank's claim. Thus Stephenson is subrogated to the Bank's prepetition claim, and stands in the shoes of a prepetition creditor. See *Matter of United*

---

[9]Section 509(a) provides:

> (a) ... an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

11 U.S.C. § 509(a).

*Sciences of America, Inc.,* 893 F.2d 720, 724 (5th Cir.1990); *In re Flanagan Bros., Inc.,* 47 B.R. 299, 303 (Bankr.D.N.J.1985). Neither court below nor the Trustee has cited any authority for the proposition that postpetition payments on a guaranty are ineligible for setoff. Indeed, where, as here, a guarantor pays a debtor's creditor in full, § 509(a)'s right of subrogation has meaning *only* if the payment is made postpetition; otherwise, there would be nothing to subrogate because a *pre* petition payoff to the creditor would leave the creditor with no claim against the estate. See 3 *Collier* ¶ 509.02 at 509–6–7. We are satisfied that Stephenson's claim against Corland "arose" prepetition for purposes of setoff under § 553.

Nor is the Trustee correct when he suggests that the Bank "transferred" its claim to Stephenson postpetition in violation of § 553(a)(2)(A).[10] The Bankruptcy Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(12) (1992). A "claim," in turn, is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). When Stephenson signed the guaranty on the Corland Note, he immediately incurred a contingent liability to the Bank and gained a contingent claim against Corland in the event he paid on the guaranty. His claim was simply unmatured at the time of the petition. *United Sciences,* 893 F.2d at 724; *Braniff,* 814 F.2d at 1036. Thus there was no postpetition "transfer" within the meaning of § 553(a)(2). *United Sciences,* 893 F.2d at 724, 725; *Flanagan Bros.,* 47 B.R. at 303.

The bankruptcy court provided one additional reason for denying setoff, although the Trustee does not seek to defend the lower courts' decision on this basis. The bankruptcy court denied setoff in part because it found that Stephenson acquired the Bank's claim "for the purpose of setoff" in violation of § 553(a)(2). We note initially that motive is not explicitly mentioned in § 553(a)(2), although it is mentioned in § 553(a)(3)(C). Even under § 553(a)(3), however, illicit motive, alone,

---

[10]See note 7.

is not enough. To come within § 553(a)(3)'s proscription, the debt owed to the debtor (Corland) by such creditor (Stephenson) must have been incurred within the 90 days preceding bankruptcy. Stephenson's debt to Corland, the Stephenson Note, was incurred more than 90 days before Corland's bankruptcy. Thus Stephenson's motive is not a sufficient basis for being denied setoff under § 553(a)(2) or under § 553(a)(3).

It follows that the district court erred in completely prohibiting Stephenson from offsetting his payments to the Bank against the amount he owes Corland under the terms of the Stephenson Note. A remand is necessary, however, to determine the extent of setoff permitted. It is undisputed that Stephenson made the periodic principal and interest payments to the Bank for two years before making the balloon payment of $220,636.33 in April 1987. Neither party has briefed to us the question of whether, assuming setoff is available, Stephenson is entitled to setoff his principal *and* interest payments, or whether he is limited to his principal payments alone. We express no view on this issue.

We therefore vacate the district court's denial of setoff and its award of attorney's fees to the Trustee, and remand the case for a determination of the extent of setoff permitted by the Code. Our decision renders moot Stephenson's challenge to the amount of attorney's fees awarded.

III.

We turn finally to the Trustee's second cross appeal. The Trustee contends that the bankruptcy court erred in refusing him leave to re-amend the complaint to include an allegation of fraudulent transfer under § 548 of the Code.[11] We disagree.

---

[11]Section 548 provides:

> (a) The Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

We review a trial court's order denying leave to amend for an abuse of discretion. *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 597 (5th Cir.1981). This discretion is particularly broad where, as here, the court already allowed the plaintiff to amend his complaint once. *Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1438 (9th Cir.1986). The Trustee concedes that he made known his theory of fraudulent transfer in November 1987 when responding to defendants' motion for summary judgment. Yet the Trustee did not request leave to amend his complaint to add a claim of fraudulent transfer until September 1989, just six weeks before trial. Under these circumstances, denying the request for leave to amend was not an abuse of discretion.

IV.

For the foregoing reasons, we REVERSE the district court's judgment granting the Trustee the right to avoid Stephenson's postpetition payments to the Bank and; VACATE its award of attorney's fees and interest to the Trustee, and its denial of Stephenson's right to setoff; and REMAND for a determination on the extent of setoff permitted. We also AFFIRM the district court on both issues raised by the Trustee in its two cross appeals.

AFFIRMED in part, REVERSED and VACATED in part, and REMANDED.

---

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; ...

11 U.S.C. § 548(a)(1).