In re JONES TRUCK LINES, INC., an Arkansas Corporation, Debtor.

JONES TRUCK LINES, INC., Plaintiff,

v.

TARGET STORES, A DIVISION OF DAYTON HUDSON CORPORATION, Defendant (Two Cases).

Bankruptcy No. 91–15475M.
Adv. Nos. 93–8594M, 94–8003M.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

May 21, 1996.

Robert J. Lambert, Springdale, AR, for Plaintiff.

John R. Eldridge, Fayetteville, AR, Stephen M. Mertz, Charles F. Webber, Minneapolis, MN, for Defendant.

*MEMORANDUM OPINION.*

JAMES G. MIXON, Chief Judge.

On July 9, 1991, Jones Truck Lines, Inc., (Jones) filed a voluntary petition for relief under the provisions of Chapter 11 of the United States Bankruptcy Code. Simultaneously with the filing of the bankruptcy petition, the debtor ceased its operations and began the process of self-liquidation.

On June 9, 1993, Jones filed a complaint against Target Stores, Inc., (Target) to recover a preferential transfer made within ninety days of the petition date totaling $38,-565.66. On January 24, 1994, Jones filed a second complaint against Target to collect an

account receivable totaling $536,746.86. Target's answer asserted, among other defenses, a right of setoff. The two actions were consolidated for trial. The parties have announced settlement of the preference action and partial settlement of the account receivable action. The unresolved issue is whether Target should be permitted to exercise a right of setoff with respect to a $256,135.54 claim it has against Jones against a claim Jones has against Target for the same amount. The matter was submitted on stipulated facts and exhibits.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O), and the Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

The parties entered a written stipulation as follows:

1. On April 1, 1989, Target and Jones entered into an agreement entitled "Transportation Contract–Consolidation Service" (The "Jones contract"). Under said contract, Jones would arrange for and receive less than truckload ("LTL") shipments and merchandise from Target vendors and then ship full truckloads to either Target Distribution Centers or Target Stores.

2. On April 22, 1991, Target and Standard Trucking Company ("Standard") entered into an agreement entitled "Transportation Contract–Consolidation Advance Carrier" (The "Standard contract").

3. Jones was not a party to the Standard contract.

4. Standard was not a party to the Jones contract.

5. Standard was one of the advance carriers that provided LTL services in connection with the freight consolidation arrangement between Jones and Target.

6. On July 9, 1991, Jones filed for relief under chapter 11 of the United States Bankruptcy Code.

7. As of July 9, 1991, Jones owed Standard the sum of $256,135.54 for advance carrier services rendered by Standard in connection with the freight consolidation arrangement between Jones and Target, which Jones had not paid.

8. On August 19, 1991, a letter was received by Target from Standard demanding payment of $260,408.13, of which $256,135.54 was for the amount Jones owed Standard as of July 9, 1991.

9. Target remitted a check to Standard in the amount of $260,408.13 on June 17, 1992, pursuant to Standard's demand letter dated August 19, 1991.

10. A "Settlement Agreement and Release," dated June 19, 1992, was executed by Standard and Target subsequent to Target's payment of $260,408.13 to Standard.

11. Subsequent to Jones filing bankruptcy on July 9, 1991, Standard filed a Proof of Claim dated November 4, 1991, which was later supplemented on March 30, 1992, reflecting an unsecured claim in the amount of $256,135.54.

12. On the date Target filed its Proof of Claim, Standard's demand for payment from Target was still unpaid.

13. Jones was insolvent on and during the ninety (90) days immediately preceding July 9, 1991.

14. Jones contended that it had a claim against Target for approximately $536,000 and commenced an adversary proceeding (AP No. 94–8003) to recover that amount. Target disputed the validity of Jones claim and asserted that it had the right to offset certain debts that Jones owed Target against amounts that Target owed Jones. Jones disputed the validity and amount of Target's claim for setoff. Jones also contended that it had a preference claim against Target for approximately $38,000 and commenced an adversary proceeding (AP No. 93–8594) to recover the alleged preference. Target disputed the validity of Jones' preference claim. The two adversary proceedings were later consolidated by order of the Court.

15. Subject to obtaining Court approval, Target and Jones have settled all dis-

putes between them in the consolidated adversary proceedings (including Jones' preference claim), with the exception of $256,135.54 of Jones' claim against Target in AP No. 94–8003. That portion of Jones' claim is attributable to services provided by Standard in connection with the freight consolidation arrangement between Jones and Target. Target disputes Jones' right to recover anything on account of said services. The parties have agreed as part of their settlement to submit this remaining dispute to the Court for determination as a matter of law on stipulated facts and exhibits, reserving the right to present oral arguments to the Court.

16. While Target does not stipulate to the validity of Jones' claim against Target for $256,135.54 in AP No. 94–8003, the amount of Jones' claim ($256,135.54) is not in controversy. Likewise, while Jones does not stipulate to Target's claim for setoff in AP No. 94–8003 should the Court determine Jones is entitled to recover its disputed claim against Target, the amount of Target's setoff claim ($256,135.54) is not in controversy.

The relevant facts surrounding the remaining issue are not in dispute. The transportation contract between Target and Jones provided that costs for the consolidation services would be paid as follows: "Charges of advance carrier shall be paid by consolidator [Jones] to be billed to and reimbursed by Target in accordance with the Target consolidation manual." Stipulated Ex. 1.

The transportation contract between Target and Standard provided that "If [Jones] defaults on payment to [Standard] as a result of cessation of business due to bankruptcy or any other reason, Target will insure that [Standard] is compensated for all movements not paid by [Jones]." Stipulated Ex. 2. Thus Target guaranteed Standard that if Jones did not pay for services Standard rendered pursuant to the transportation consolidation contract Target would pay Standard for the services.

This guaranty was executed prepetition within ninety days before the petition was filed. Jones failed to make payments to Standard for services rendered and filed for bankruptcy protection. At the time the petition was filed, Jones owed Standard $256,135.54. On June 17, 1992, pursuant to Target's obligation under its guaranty to Standard, Target paid Standard the $256,-135.54.

## DISCUSSION

In order for Target to establish its *right of setoff, it must demonstrate:*

1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.

2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.[1]

3. The debt and the claim are mutual obligations.

*United States v. Gerth,* 991 F.2d 1428, 1431 (8th Cir.1993). Jones does not dispute Target's assertion that it has established the three elements necessary to exercise the right of setoff, but argues that the claim on which the setoff is based was transferred to Target by Standard during the ninety-day period prohibited by 11 U.S.C. § 553(a)(2)(B). Section 553(a)(2)(B) provides that:

(a) Except as otherwise provided ..., this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case except to the extent that—

. . . .

(2) such claim was transferred, by an entity other than the debtor, to such creditor—

. . . .

(B)(i) after 90 days before the date of the filing of the petition and

---

1. Jones and Target agree that Target acquired a "contingent claim" when the guaranty was signed prepetition.

(ii) while the debtor was insolvent.

11 U.S.C. § 553(a)(2)(B) (1994).

 Jones' argument fails for several reasons. A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A) (1994). When Target signed the guaranty it immediately incurred a contingent direct liability to Standard and gained a contingent claim against Jones in the event Target paid on the guaranty. *Stephenson v. Salisbury (In re Corland Corp.)*, 967 F.2d 1069, 1078 (5th Cir.1992). The obligation created by the guaranty was a direct obligation from Target to Standard supported by valuable consideration, i.e., performance of contract. A claim is not transferred within the meaning of section 553(a)(2) " 'when the claim used as a setoff has been acquired as a result of a direct legal obligation.' " *In re Flanagan Bros., Inc.*, 47 B.R. 299, 303 (Bankr.D.N.J. 1985) (quoting *Bel Marin Driwall, Inc. v. Grover*, 470 F.2d 932, 936 (9th Cir.1972)). Therefore, there was no "transfer" within the meaning of section 553(a)(2). *Corland*, 967 F.2d at 1078 (stating there was no postpetition transfer in an analogous fact situation).

 When Jones defaulted in its obligation to Standard the contingency of Target's claim to Standard was met, and Target was contractually obligated to pay Standard the amount Standard was due to receive from Jones. At the time the petition was filed, Standard had a prepetition claim against the estate for unpaid services rendered to Jones. *Corland*, 967 F.2d at 1077–78. When Target, as guarantor, paid Standard, it was subrogated to Standard's prepetition claim, and stood in the shoes of the prepetition creditor. *Corland*, 967 F.2d at 1078. The Bankruptcy Code addresses subrogation under section 509(a) as follows:

[A]n entity that is liable with the debtor on, or that has secured, a claim of a credi-

tor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

11 U.S.C. § 509(a) (1994). Here, Target, as guarantor, paid Standard's prepetition claim in full postpetition. Postpetition payments on a guaranty entered into prepetition are eligible for setoff and are the exact type of payments contemplated by section 509(a). *Corland*, 967 F.2d at 1078.

 In addition, the facts of this case do not present the type of situation Congress intended to address by section 553(a)(2)(B). The focus of section 553(a)(2)(B) was "the creditor [who was] attempt[ing] to obtain a preference or put itself in a preferred position relative to other creditors" prior to the filing of the bankruptcy proceeding. 4 *Collier on Bankruptcy* ¶ 553.08[2] (Lawrence P. King ed., 15th ed. 1996); *Sherman v. First City Bank (In re United Sciences of Am., Inc.)*, 893 F.2d 720, 724 (5th Cir.1990). Congress wanted to "prohibit trafficking in claims against the debtor in order to effect setoff (which would provide a windfall to both parties to the transfer at the expense of the estate)." *Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768, 779 (Bankr. S.D.N.Y.1988). These circumstances do not exist in the instant case. Here, Target did not attempt to acquire a claim from a third party prior to the bankruptcy to enhance its position, but rather entered into a guaranty agreement that created a direct obligation to Standard contingent on Jones' nonpayment of services performed pursuant to the transportation consolidation contract. Indeed, to apply subsection 553(a)(2)(B) to prevent a guarantor from setting off its claim would effectively require the guarantor to pay twice, "once when [it] is called upon to pay the creditor, and once when [it] is called upon to pay the debtor." *In re Denby Stores, Inc.*, 86 B.R. at 779. This result would be inequitable and is not what Congress intended.

Neither case law nor logic supports Jones' argument.[2] Jones' argument would not only

---

2. Jones cites two cases in support of its argument that a claim was transferred to Target. The facts of the first case, *In re Wood*, 87 B.R. 170 (Bankr. D.Kan.1988), are distinguishable from the facts of this case because *Wood* involved an actual

assignment of a claim within the ninety-day prohibited period, not a direct obligation created by a guaranty.

The facts of the second case, *Wooten v. Vicksburg Refining, Inc. (In re Hill Petroleum Co.)*, 95

deny Target a lawful right of setoff, but would require Target to pay twice for the same services. The parties address other arguments in their briefs but in view of the authority sanctioning Target's right to setoff, it is unnecessary to discuss the other arguments. For the reasons stated herein, Target is permitted to setoff $256,135.54 against Jones' claim against Target for the same amount. A separate judgment consistent with this memorandum opinion will be entered pursuant to Bankruptcy Rule of Procedure 7052.

IT IS SO ORDERED.

B.R. 404 (Bankr.W.D.La.1988), are also completely distinguishable from the facts of this case. First, as in *Wood*, no guaranty agreement was involved in *Hill*. In addition, the setoff in issue involved one creditor setting off a debt owed by the debtor to it against a claim a second creditor owed to the debtor. The court in *Hill* found that the claim could not be setoff because of lack of mutuality. *Hill*, 95 B.R. at 411.