UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: DENNIS LENNAN, t/a Lennan's
Maytag Home Appliance Center,
<u>Debtor.</u>

TYSONS NATIONAL BANK,

<u>Plaintiff-Appellee,</u>

No. 96-1911

v.

DENNIS LENNAN, t/a Lennan's
Maytag Home Appliance Center,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan Jr., Senior District Judge.
(CA-96-338-A, BK-95-15345-SSM)

Argued: May 6, 1997

Decided: October 9, 1997

Before WILKINSON, Chief Judge, WILKINS, Circuit Judge,
and TRAXLER, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Konstantinos Alexakis, Alexandria, Virginia, for Appel-
lant. Henry F. Brandenstein, Jr., REES, BROOME & DIAZ, P.C.,

Vienna, Virginia, for Appellee. **ON BRIEF:** Michael L. O'Reilly, REES, BROOME & DIAZ, P.C., Vienna, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this bankruptcy suit, Appellant Dennis Lennan, trading as Lennan's Maytag Home Appliance Center ("Lennan"), appeals various holdings by the district court, but the gravamen of his appeal is that Tysons National Bank ("Tysons") violated the automatic stay triggered by Lennan's bankruptcy in that Tysons placed an administrative hold on Lennan's accounts at Tysons. Additionally, Lennan contends that the district court erred in affirming the bankruptcy court's awarding attorneys' fees to Tysons in excess of Tysons's offset rights and denying attorneys' fees to Lennan. We affirm.

I.

In connection with operating his appliance repair operations, in September 1994, Lennan established an irrevocable letter of credit with Suburban Bank of Virginia ("Suburban") for $15,000 in favor of Maytag Corporation d/b/a Maytag and Admiral Products ("Maytag"). This letter of credit was valid for one year and automatically renewed for one year unless Lennan notified Suburban at least sixty days prior to renewal. Simultaneous with establishing the letter of credit, Lennan executed a promissory note in favor of Suburban that provided the terms under which Lennan must satisfy his obligation to Suburban if Maytag drew on the letter of credit. Also in conjunction with establishing the letter of credit, Lennan purchased a certificate of deposit for $15,000 from Suburban to secure the indebtedness under the promissory note were Maytag to draw on the letter of credit; thus, the certificate of deposit served as collateral for Lennan's indebtedness to

2

Suburban. Material for purposes of this appeal, Tysons represents in its brief, and Lennan does not dispute, that the promissory note and the certificate of deposit provided that Suburban would recover attorneys' fees and costs in the event of litigation regarding these instruments.

Subsequently, Lennan borrowed an additional $71,000 from Suburban, which loan was guaranteed by the Small Business Administration ("SBA"). To secure this loan, Lennan executed a second deed of trust on his home and a lien on all other accounts Lennan held at Suburban. Payments on this SBA-guaranteed loan were automatically withdrawn from Lennan's checking account at Suburban. Following this loan, Tysons acquired all rights and interests of Suburban; accordingly, Lennan became indebted to Tysons based on his transactions with Suburban.

On November 29, 1995, confronted with unpaid invoices of approximately $38,000, Maytag drew $15,000 on the letter of credit, which Tysons honored on December 1, 1995; hence, Lennan became indebted to Tysons for $15,000, plus interest, but Tysons continued to hold the certificate of deposit as collateral for that obligation. On November 30, 1995, Lennan filed for bankruptcy reorganization under Chapter 11 of the Bankruptcy Code, see 11 U.S.C.A. §§ 1101-1146 (West 1993 & Supp. 1997), thereby triggering the automatic stay of 11 U.S.C.A. § 362(a) (West 1993 & Supp. 1997). Realizing Lennan's precarious financial health, Tysons unsuccessfully sought to gain Lennan's permission to liquidate the certificate of deposit to satisfy the $15,000 plus interest. Stymied by Lennan's refusal to liquidate the certificate of deposit, on December 8, 1995, Tysons issued an administrative hold respecting Lennan's accounts, which, combined with the $15,000 plus interest on the letter of credit, resulted in Tysons's holding approximately $23,000 of Lennan's funds. As consequences of this administrative hold, six of Lennan's checks were returned for insufficient funds, resulting in $150 in penalties, and his SBA-guaranteed loan could not be amortized, resulting in default.

On December 15, 1995, Tysons moved the bankruptcy court to lift the automatic stay so that Tysons could liquidate the certificate of deposit and offset against Lennan's accounts debts owed to Tysons in excess of the amount of the certificate of deposit. Opposing Tysons's

motion, Lennan moved to have Tysons adjudged in contempt for violating the automatic stay by placing the administrative hold on his accounts; moreover, Lennan moved the bankruptcy court to order Tysons to release funds under the administrative hold, including the certificate of deposit. The bankruptcy court lifted the automatic stay so that Tysons could offset $16,872, which represented the $15,000 indebtedness and interest under the letter of credit. Concluding that Tysons violated the automatic stay via the administrative hold, which applied to funds in excess of Tysons's offset rights, the bankruptcy court ruled that Tysons reimburse Lennan the $150 in penalties, dissolve the administrative hold, refrain from considering the SBA-guaranteed loan in default, and pay Lennan $500 for violating the automatic stay. In addition, the bankruptcy court granted Tysons $2703.69 in attorneys' fees, which, likewise, were offset against Lennan's accounts.

Lennan appealed to the district court, which affirmed all of the bankruptcy court's rulings, save the $500 payment by Tysons to Lennan for allegedly violating the automatic stay. According to the district court, the administrative hold, despite the fact that Tysons applied it in excess of funds then owed, was proper given that interest was accruing and Tysons acted in a timely manner in seeking to lift the automatic stay. The district court, therefore, reversed the ruling that Tysons pay Lennan $500.

Appealing to us, Lennan challenges the district court's judgment on a variety of grounds. First, Lennan posits that Tysons violated the automatic stay by placing the administrative hold on his accounts, specifically arguing that Tysons possessed no prepetition right to offset the funds in his accounts. Second, Lennan asserts that he is entitled to the $500 in recompense for Tysons's violating the automatic stay. Third, Lennan contends that Tysons is not entitled to attorneys' fees in excess of the certificate of deposit. Finally, Lennan maintains that he is entitled to attorneys' fees.

II.

We first state our standard of review. In the instant appeal, the bankruptcy court made findings of fact and conclusions of law. In such a procedural posture, like the district court, we review the bank-

4

ruptcy court's method of fact finding for clear error, but we exercise plenary review over its legal conclusions. See Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.), 914 F.2d 458, 467 (4th Cir. 1990). Lennan's persuading us that the bankruptcy court erred in its fact-finding method is a weighty burden indeed because "[i]n reviewing factual findings, our scope of review is particularly circumscribed, being limited to determining whether the facts as found by the [trial] court are clearly erroneous." See Jiminez v. Mary Washington College, 57 F.3d 369, 378 (4th Cir.), cert. denied, 116 S. Ct. 380 (1995). Thus, "[f]acts are conclusive on appeal . . . unless they are plainly wrong." Id. at 378-79. Precedent prohibits our substituting our judgment for that of the bankruptcy court, and the force of this precept precludes reversal here unless we are "`left with the definite and firm conviction that a mistake has been committed.'" Id. at 379 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Of course, as a successive court, we freely review the bankruptcy court's legal conclusions. See Chmil v. Rulisa Operating Co. (In re Tudor Assocs. II), 20 F.3d 115, 119 (4th Cir. 1994). Guided by this procedural standard, we address Lennan's arguments seriatim.

A.

Lennan first contends that the district court erred in concluding that Tysons's placing an administrative hold on the certificate of deposit did not violate the automatic stay of § 362(a), which prohibits institution or continuation of proceedings against the debtor or the bankruptcy estate without first petitioning the bankruptcy court to lift the automatic stay. Indeed, § 362(a)(7) specifically provides that the automatic stay applies to "setoff of any debt owing to the debtor that arose before the commencement of the case . . . against any claim against the debtor[.]" 11 U.S.C.A. § 362(a)(7) (West 1993). Balanced against the automatic stay provision, however, is 11 U.S.C.A. § 553(a) (West 1993 & Supp. 1997), which preserves the common law right to offset prepetition mutual debt. We conclude that Citizens Bank of Maryland v. Strumpf, 116 S. Ct. 286 (1995), forecloses Lennan's first contention.

The Strumpf Court construed the interplay between the automatic stay of § 362(a) and the right to offset under§ 553(a) and concluded

5

that a bank's placing an administrative hold on funds in a debtor's account pending disposition of the bank's offset right did not violate the automatic stay. In Strumpf, Strumpf maintained a bank account with a bank to which he owed approximately $5000 as a result of a default on a loan. See id. at 288. Subsequent to Strumpf's filing bankruptcy, the bank placed an administrative hold on Strumpf's account in an amount that the bank asserted it was entitled to as offset; consequently, the bank refused to honor drafts that would diminish the balance in Strumpf's account below the bank's asserted right of offset and moved the bankruptcy court to lift the automatic stay. See id. Displeased with the bank's administrative hold, Strumpf moved to have the bank held in contempt for violating the automatic stay. See id. The bankruptcy court ruled in favor of Strumpf, but the district court reversed. On further appeal, however, we reversed the district court, concluding that the administrative hold effectuated a right of offset thereby violating the automatic stay. See id.

The Supreme Court concluded that the administrative hold did not violate the automatic stay. First, the Court explained that § 553(a) preserved a state-created right of prepetition offset as to mutual debts, and in so explaining, observed that the bank possessed the right to offset the defaulted loan vis a vis Strumpf's account. See id. at 289. Second, the Court held that the bank's placing an administrative hold on Strumpf's account did not constitute a setoff because the bank had not permanently refused to honor Strumpf's debts, but only temporarily so refused while it sought relief from the automatic stay. See id. Given the transitory nature of the bank's refusal, the requisite intent to constitute an offset was lacking; consequently, the bank's conduct did not violate the automatic stay. According to the Court, therefore, § 553(a) permits a bank the temporary right to refuse to honor a debtor's obligations that were subject to offset as against a debt the debtor owed the bank. In rendering its judgment, the Court specifically rejected the contention that the administrative hold violated the automatic stay, concluding that the administrative hold was not a device for exercising dominion over Strumpf's account, but merely constituted a transient refusal to perform a promise. See id. at 290.

Applying Strumpf, we conclude that Tysons's conduct was permissible. Like the Strumpf bank, Tysons placed an administrative hold on Lennan's account and expeditiously moved the bankruptcy court for

6

relief from the automatic stay to liquidate the certificate of deposit. Lennan's accounts at Tysons constituted a debt owed by Tysons to Lennan, see Elsinore Shore Assocs. v. First Fidelity Bank, N.A. (In re Elsinore Shore Assocs.), 67 B.R. 926, 936 (Bankr. D.N.J. 1986), so Tysons could appropriate funds in Lennan's accounts by offsetting them against the balance due on Lennan's debt to Tysons, see Armstrong v. Dakota Bank & Trust Co. (In re Knudson), 929 F.2d 1280, 1284-85 (8th Cir. 1991). In this respect, Lennan is simply incorrect in contending that there was no prepetition debt for Tysons to offset. Specifically, Lennan established the letter of credit and executed a promissory note obligating him for any drafts made against the letter of credit; moreover, he advanced the certificate of deposit as collateral, and all of these transactions occurred prepetition. We hold, therefore, that Lennan's debt was prepetition debt. See Stephenson v. Salisbury (In re Cordland Corp.), 967 F.2d 1069, 1078 (5th Cir. 1992) (explaining that "debt" is liability on a claim and signing a guaranty on a note results in immediate liability, even if the contingency is unmatured). As a consequence, Tysons could issue an administrative hold on Lennan's accounts while seeking relief from the automatic stay to exercise its offset rights.* Our conclusion spares Tysons a Hobson's choice: The administrative hold preserves Lennan's accounts by freezing them, but simultaneously is not an attempt to improve the bank's right to distribution of assets. Thus, Tysons is not caught between the Scylla and Charybdis of desiring to maintain Lennan's accounts in satisfaction of its debt while risking violating the automatic stay.

B.

Next, Lennan posits that the district court erred in reversing the $500 award of compensatory damages that the bankruptcy court granted him for Tysons's allegedly violating the automatic stay. The gravamen of this position is that Tysons violated the stay by freezing funds in excess of its offset. Again, we conclude that Strumpf forecloses this position. As the Strumpf Court made clear, Lennan's accounts at Tysons did not constitute property of the bankruptcy

_____

*Like the Strumpf Court, we do not address the issue of whether Tysons's temporary refusal was otherwise improper. See Strumpf, 116 S. Ct. at 289.

7

estate, but were debts owed to the bankruptcy estate. In this connection, the administrative hold did not "t[ake] something from [Lennan], or exercise[ ] dominion over property that belonged to [Lennan]." See Strumpf, 116 S. Ct. at 290. Because Tysons's conduct did not deprive Lennan of his funds, particularly given the transitory nature of the administrative hold, he lacks injury requiring recompense. Hence, Lennan is not entitled to the $500 in compensatory damages. We therefore affirm the district court's reversing the award of $500 compensatory damages.

C.

Lennan asserts that Tysons is not entitled to attorneys' fees in excess of the certificate of deposit. We disagree. Respecting attorneys' fees, the Bankruptcy Code provides in pertinent part:

> To the extent that an allowed secured claim is secured by property the value of which, . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C.A. § 506(b) (West 1993). Thus, the Bankruptcy Code provides that if the value of the collateral Tysons holds exceeds the amount of Lennan's debt to Tysons at the time the bankruptcy petition was filed, Tysons possesses a secured claim in any postpetition expenses provided by the contract between the parties, as well as the original debt.

Although the parties have not favored us with copies of the instruments they wish us to apply, and Tysons wholly failed to respond to this argument in its brief, as we read the record and Lennan's brief, we conclude that the promissory note granted to Tysons a lien not only on the certificate of deposit but also on Lennan's checking and savings accounts. In this respect, we observe that the bankruptcy court's order awarding attorneys' fees refers to "cash collateral," which we read as referring to the funds in Lennan's checking and savings accounts. The claimed excess that Lennan urges does not exist because the cash collateral encompasses not only the $15,000 certifi-

8

cate of deposit, but also funds in Lennan's checking and savings accounts at Tysons. Consequently, we conclude that the award of attorneys' fees was proper. See Unsecured Creditors' Committee 82-00261c-11A v. Walter E. Heller & Co. Southeast, Inc. (In re K.H. Stephenson Supply Co.), 768 F.2d 580, 585 (4th Cir. 1985) (discussing oversecured creditor's attorneys' fees award); In re Nordmann, 56 B.R. 634, 636 (Bankr. D.S.D. 1986) (same).

D.

Finally, Lennan maintains that he is entitled to attorneys' fees pursuant to 11 U.S.C.A. § 362(h) (West 1993), which provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The flaw with this argument is that it presumes there was a willful violation of the automatic stay of § 362. As we explained, Strumpf precludes finding a violation, much less a willful one. Tysons's placing the administrative hold on Lennan's accounts did not violate the automatic stay. Accordingly, with no violation, Lennan is not entitled to attorneys' fees. Thus, we affirm the denial of attorneys' fees to Lennan.

III.

We conclude that Tysons's placing the administrative hold on Lennan's accounts was permissible under Strumpf and that Lennan is not entitled to the $500 in compensatory damages. Moreover, we conclude that Tysons was properly awarded attorneys' fees in excess of the certificate of deposit and that Lennan was properly denied them. The judgment of the district court is affirmed.

AFFIRMED

9