**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-21065
(Summary Calendar)

IN THE MATTER OF: KIMBALL TRADING COMPANY INC.,

Debtor.

-------------------------------------------------------------------------------------------------------------------------

ENGAGE ENERGY US LIMITED PARTNERSHIP,

Appellant,

versus

JEFFREY A. COMPTON, Liquidating Trustee of Kimball
Trading Company LLC,

Appellee.

Appeal from the United States District Court
for the Southern District of Texas
(H-99-CV-1751)

June 30, 2000

Before HIGGINBOTHAM, DEMOSS, and STEWART, Circuit Judges.

PER CURIAM:[*]

Engage Energy US Limited Partnership ("Engage") appeals the district court's final judgment

which affirmed the bankruptcy court's denial of its motion for relief from automatic stay. For the

following reasons we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case are undisputed and have been stipulated to by the parties. On March

10, 1999 Kimball and Kimball Trading Canada, Inc. ("Kimball") filed voluntary petitions under

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Chapter 11 of Title 11 of the Bankruptcy Code. Prior to filing for bankruptcy, Engage and Kimball entered into a series of natural gas purchase and sale transactions pursuant to Gas Transaction Agreement No. 2568 ( the "Gas Transaction Agreement"). Pursuant to this Gas Transaction Agreement, in February and March 1999 Engage sold and delivered to Kimball 373, 475 MMBtu of natural gas. Engage's pre-petition claim against Kimball for the sale and delivery of this natural gas is approximately $788,075.18.

In March 1998, Engage and Kimball entered into Delivery and Redelivery Services Contract No. 4906 (the "D/R Contract"). Pursuant to the D/R Contract, Kimball delivered certain volumes of natural gas to Engage between April 1, 1998 and October 31, 1998. Kimball transferred complete title and interest of the natural gas to Engage at the point of delivery. Engage, in turn, was obligated to redeliver volumes of natural gas equal to the total volumes delivered to Engage by Kimball upon nominations by Kimball ("Redelivery Obligation"). As of the commencement of the bankruptcy proceedings Engage had an obligation to redeliver 290,256 MMBtu of natural gas to Kimball, upon Kimball's nomination.

On March 29, 1999 Engage filed a Motion for Relief from Automatic Stay pursuant to 11 U.S.C. § 362(d). The bankruptcy court denied the motion for relief from automatic stay finding that Engage's Redelivery Obligation did not constitute a "debt" entitled to setoff under 11 U.S.C. § 553(a). The district court affirmed the bankruptcy court's judgment.

DISCUSSION

Engage argues that when it accepted delivery of gas from Kimball under the D/R contract it had an obligation to redeliver the gas to Kimball, and because it did not redeliver the gas that is a debt to Kimball that should be subject to set-off from the debts owed by Kimball to Engage. The determination of whether a party has a right to setoff pursuant to 11 U.S.C. § 553(a) ("§553" or "section 553") is reviewed de novo. United States v. Gerth, 991 F.2d 1428, 1430 (8th Cir. 1993).

Setoffs in bankruptcy are governed by section 553, which provides in pertinent part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a). Thus, under this section to maintain a right of setoff, the creditor must prove the following:

> 1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.
> 2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.
> 3. The debt and the claim are mutual obligations.

Braniff Airways, Inc. v. Exxon Company, U.S.A., 814 F.2d 1030, 1035 (5th Cir. 1987) (citations omitted). A "debt" is defined as "a liability on a claim." 11 U.S.C. § 101(11). A "claim" is:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, natural, unnatural, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5).

In the present case, it is undisputed that prior to its petition for bankruptcy Kimball owed Engage $788, 075.18 for various transactions. Thus, the only issue is whether Engage's Redelivery Obligation is a pre-petition debt for purposes of setoff under § 553(a). Engage claims that the Redelivery Obligation was a "debt" because the term "debt" should be read broadly to include enforceable obligations. We agree with the conclusion of the bankruptcy court and

district court that Engage's agreement to redeliver gas under the D/R contract is not a "debt" for the purpose of set-off under the Bankruptcy Code.

First, under the D/R contract between Kimball and Engage, Engage would only be required to redeliver the natural gas to Kimball upon Kimball making valid nominations. Engage admits in its briefing to this court and in the stipulations of fact that Engage's Redelivery Obligation was contingent on valid nominations being made by Kimball. Prior to the petition for bankruptcy Kimball did not request that Engage redeliver 290, 256 MMbtu of natural gas, thus Engage was under no actual obligation to redeliver this gas. Kimball was not entitled to payment nor had the right to an equitable remedy for breach of performance due to Engage's failure to redeliver this natural gas.

Engage argues that this case is similar to the facts in Braniff. In Braniff, Braniff Airlines and Exxon were parties to a contract for the sale of jet turbo fuel. Braniff, 814 F.2d at 1030. Braniff prepaid to Exxon $530,000, and when Braniff filed its bankruptcy petition it had only used $96, 252.11 in fuel. Id. Thus, Exxon owed Braniff $434, 972.20. Braniff argued that this amount was not a debt subject to setoff because the amount of the unused fuel was not calculated until after the petition for bankruptcy was filed. Id. at 1035. This court concluded that the amount Exxon owed to Braniff occurred pre-petition because all the transactions which gave rise to the debt occurred prior to the petition, but the debt had been *calculated* after the petition was filed. Id. at 1036 (emphasis added).

In the present case, there is no indication that Engage's failure to redeliver all of the natural gas that had been delivered by Kimball, gave Kimball any right to payment from Engage or the right to an equitable remedy for breach of performance. Kimball, by failing to make valid nominations for redelivery of some of the natural gas, simply forfeited its right to redelivery of the gas held by Engage. Thus, unlike Braniff, under these circumstances there was no amount of money or gas that Engage was obligated to return to Kimball.

4

Engage also argues that although Kimball had not made the necessary nominations to require Engage to redeliver the natural gas, the Supreme Court's decision in <u>Cohen v. De La Cruz</u>, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed. 2d 341 (1998), stands for the proposition that a "debt" can be broadly defined to include "enforceable obligations." Engage correctly states that in <u>De La Cruz</u> the Supreme Court stated that a "debt" is defined as a "liability on a claim" and a "claim" in turn is defined as a "right to payment", which is "nothing more nor less than an enforceable obligation." <u>De La Cruz</u>, 523 U.S. at 217. However, Engage has failed to demonstrate that its Redelivery Obligation to Kimball was an enforceable obligation. Because Kimball did not make the valid nominations to have the gas redelivered under the D/R Contract, Engage had no obligation to redeliver the gas that could be enforced by Kimball.[1] Thus, we hold that Engage's Redelivery Obligation does not constitute a debt for the purposes of setoff under §533(a).

## CONCLUSION

For the reasons stated above we AFFIRM the district court's judgment.


AFFIRMED.

---

[1]Engage also argues that this court's decision in <u>Stephenson v. Salisbury (In Re: Corland Corporation</u>, 967 F.2d 1069 (5th Cir. 1992). However, <u>Corland</u> dealt specifically with a setoff claim in the context of a creditor and guarantor. This court in <u>Corland</u> does discuss the concept of "contingent debt", but only in reference to a guarantor's obligations. <u>See Corland</u>, 967 F.2d at 1077-78. Thus, that discussion of contingent debt is not applicable in the present case.